FILED
09/17/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2021

### SARAH H. RICHARDSON v. BENJAMIN N. RICHARDSON

**Appeal from the Circuit Court for Montgomery County
No. CC-14-1953     Ross H. Hicks, Judge**

_____

**No. M2020-00179-COA-R3-CV**

_____

Mother appeals the trial court's decision to change the parties' permanent parenting plan to designate Father as the primary residential parent of the children. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and W. NEAL MCBRAYER, J., joined.

Mart G. Fendley and Paisley Anderson, Clarksville, Tennessee, for the appellant, Sarah H. Richardson.

Jacob P. Mathis and Tiffany D. Leffler, Clarksville, Tennessee, for the appellee, Benjamin N. Richardson.

**OPINION**

### I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff/Appellant Sarah Richardson ("Mother") and Defendant/Appellee Benjamin Richardson ("Father") were divorced on July 10, 2015. Incorporated into the divorce decree was an agreed permanent parenting plan that designated Mother as the primary residential parent for the parties' two children. Because Father is an active duty military member, Father's time with the children was dependent on whether he resided in the Clarksville, Tennessee area. If he did, the parties would enjoy equal time with the children. If not, Mother would enjoy substantially more time with the children.

Pursuant to the parties' marital dissolution agreement, Mother was awarded the

marital home in Clarksville and the responsibility of the mortgage payments going forward, but Father was ordered to make payments to get the mortgage current. Father was unable to do so, and the mortgage was foreclosed. As a result, Mother asserted that she informed Father that she was moving to Texas so that a "friend" who was also in the military could help prevent her from becoming homeless. Mother married this "friend" only a short time after the divorce was finalized. There was some dispute as to whether Mother properly notified Father of the move, but Mother moved in any event. As a result of the move, Father was not able to exercise equal parenting time even when he resided in the Clarksville area.

Mother later filed a petition to modify the permanent parenting plan on April 3, 2019. Therein, Mother alleged that a material change in circumstances had occurred due to her relocation and Father's refusal to communicate or abide by the current parenting plan. Mother further asserted that it was in the children's best interest that she continue to be named primary residential parent, but that Father's parenting time be reduced to only eighty days per year. Mother also asked that child support be recalculated based on any changes in parenting time.

Father filed an answer and counter-petition on April 11, 2019. Therein, Father admitted that a material change in circumstances had occurred, but asserted that the material change related to Mother's behavior. In particular, Father alleged that Mother, *inter alia*, involved the children in adult conversations, refused to cooperate with Father regarding his parenting time, denied Father parenting time, and made constant attempts to alienate the children from him. Father asserted that these facts constituted a material change in circumstances, but that it was in the children's best interest that he be named primary residential parent.[1] Mother answered Father's counter-petition on April 16, 2019, denying the material allegations therein.

On July 5, 2019, Father filed a motion for contempt and to enforce the summer parenting time provided for in the permanent parenting plan. Father struck his motion twenty days later. On August 5, 2019, the parties entered into an agreed order setting trial for December 5, 2019. The parties participated in mediation on August 6, 2019, which was unsuccessful.

On October 17, 2019, Father filed a motion to hold Mother in contempt and to enforce the Thanksgiving parenting time contained in the parties' permanent parenting plan. Father asserted that because he resided in Clarksville, he was entitled to Thanksgiving parenting time on odd years, i.e., 2019. According to Father, Mother refused to allow him this parenting time, arguing that Thanksgiving is the same as Fall break, which Mother was awarded on odd years. Father therefore asked that Mother be held in contempt and that he be awarded the proper parenting time. Mother responded to Father's motion on October

---

[1] Father's counter-petition did not include a proposed parenting plan, but he filed his proposed plan on May 23, 2019.

22, 2019, arguing that because Father was given the Thanksgiving holiday in 2018, she was entitled to the holiday in 2019. After a hearing, however, the trial court ruled that Father was entitled to the Thanksgiving holiday under the permanent parenting plan. The trial court did not, however, address Father's request that Mother be held in contempt.

Not to be deterred, Father filed another motion for Mother to be held in contempt on November 5, 2019. Therein, Father alleged that Mother had made derogatory comments against Father in front of the children in violation of the permanent parenting plan. Father therefore asked that Mother be found in criminal contempt and sentenced to ten days in jail, and that he be awarded attorney's fees. Mother later filed a response to Father's motion, denying the material allegations contained therein.

On November 6, 2019, Mother filed a motion for the trial court to appoint a guardian ad litem for the children under Rule 40A of the Rules of the Tennessee Supreme Court. Mother also asked that the final hearing be continued to allow the guardian ad litem to investigate. In her motion, Mother alleged that her petition "contains serious allegations involving Father which require further investigation by an advocate for the minor children." Mother alleged the same about Father's petition. Moreover, Mother alleged that "unless an advocate is appointed to represent the minor children's best interests[,] the children will continue to be influenced by Father's actions and will suffer significant emotional harm." Father opposed both the appointment of a guardian ad litem and the continuation of the trial. The trial court denied Mother's motion for the appointment of a guardian ad litem and to continue the trial by order of November 19, 2019.

Trial occurred on December 5, 2019. Several exhibits were introduced at trial, including text messages between the parties, a school calendar, before-and-after photographs of the children's haircuts, pictures stating that they showed the worn-out and wrong-sized shoes sent with the children by Mother on visits to Father, a letter written by Father's current wife ("Step-Mother") to Mother, and a recording of a call between the parties. In the letter, Step-Mother sought to introduce herself to Mother as the person who would "be tending to most of the children's needs," including "kiss[ing] boo-boos, . . . help[ing] with homework, . . . buy[ing] the birthday presents, organiz[ing] the family calendar, [and] mak[ing] playdates[.]" The letter further stated that it was not about Father, but about Step-Mother's own desire to parent the children. The letter ended as follows:

So, I write to you to ask a tough question. Can I take care of [the children]? This question comes with the understanding that they are expected to continue building a relationship with you [and your family]. We do not want to take the girls away from your home. We want to care for them and love them. . . .

The recorded phone call was initially between Father and one of the children. The child asked Father why he went to court over the 2019 Thanksgiving parenting time, when

- 3 -

Father had parenting time the previous Thanksgiving. Father attempted to deflect the question by asserting that it was an adult issue. Mother then entered the call, berating Father for not answering the question, and for hurting the children with his actions, Step-Mother's ill-advised letter, and generally acting in a selfish manner.[2] Mother denied that the children were present during the call, but children could be heard at times in the background, and during the call Mother admitted their presence.

At the conclusion of the trial, the trial court orally ruled that Father had shown a material change in circumstances and that the best interest factors favored naming him the primary residential parent. The trial court also found that Mother was guilty of criminal contempt and sentenced her to ten days incarceration, suspended to two days.

On December 18, 2019, Father filed a motion to enforce the suspended sentence against Mother on the basis that she was still denying Father contact with the children. On January 3, 2020, Father also filed a motion to relocate with the children, as he had been transferred due to his military service. Mother later responded in opposition to both motions. As to the motion to enforce the suspended sentence, Mother denied that she denied Father contact with the children; instead, she claimed she was just respecting the children's wish not to speak to Father. As for the proposed relocation, she claimed that Father knew about his upcoming move by the time of trial and intentionally withheld that information. Mother asked that Father's relocation be denied or that the children be returned to her care.

A written order on the modification of the parenting plan was eventually entered on January 3, 2020. Therein, the trial court first ruled that Mother's relocation to Texas was reasonable under the circumstances and that issues related to the relocation were now moot. The trial court further ruled that Mother failed to meet her burden to demonstrate a material change in circumstances, but that Father had met his burden. The trial court then went on to consider the factors outlined in Tennessee Code Annotated section 36-6-106, which it ruled favored Father in the aggregate. The trial court then ruled that based on the section 36-6-106 factors "as stated above," Father's proposed parenting plan would be adopted as in the best interests of the children. The parenting plan provided that Mother would enjoy 103 days with the children, while Father would enjoy 262.

As to Father's contempt allegations, the trial court ruled that Mother would not be held in contempt regarding the allegations that she denied Father summer and Thanksgiving parenting time. The trial court did rule that Mother was in contempt based on Father's November 5, 2019 motion. Specifically, the trial court ruled that the contempt allegation was "more than sustained by Exhibit 8" and that Mother was guilty beyond a reasonable doubt. The trial court sentenced Mother to ten days incarceration, suspended to two days. Finally, the trial court awarded Father nearly $7,000.00 in attorney's fees.

---

[2] The call and its exact contents are discussed in detail, *infra*.

On January 31, 2020, Mother filed a motion for the trial court to find additional facts concerning Mother's income for child support purposes. This motion was eventually struck by agreement. Also on January 31, 2020, Mother filed a notice of appeal to this Court. While this appeal was pending, on February 5, 2020, the trial court entered a written order finding that Father's relocation was reasonable and in the best interest of the children.[3] But the trial court further found that because Father moved prior to the hearing on the relocation, he would be ordered to pay Mother's attorney's fees in opposing the relocation. Thus, the trial court ruled that the prior judgment of attorney's fees would be reduced by the amount of Mother's attorney's fees. Finally, the trial court ruled that it would not enforce the suspended sentence, but that it would retain jurisdiction to do so until July 15, 2020.

## II. ISSUES PRESENTED

Mother raises four issues in this case, which we restate and reorder as follows:

1. Whether the trial court's order complies with Rule 52.01 of the Tennessee Rules of Civil Procedure?
2. Whether the trial court erred in finding that it was in the children's best interests for Father to be named primary residential parent?
3. Whether the trial court erred in finding that Mother committed contempt and ordering her to serve two days incarceration?
4. Whether the trial court erred in denying Mother's motion to appoint a guardian ad litem?

In the posture of appellee, Father seeks an award of attorney's fees incurred on appeal.

## II. STANDARD OF REVIEW

It is well-settled that, in matters of child custody, visitation, and related issues, trial courts are given broad discretion; consequently, appellate courts are reluctant to second-guess a trial court's determinations regarding these important domestic matters. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013); *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). As explained in *Richards on Tennessee Family Law*:

> Appellate courts correct errors. When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand. This maxim has special significance in cases reviewed under the abuse of discretion standard. The abuse of discretion standard recognizes that the trial court is in a better position than the appellate court to make certain judgments. The abuse of

---

[3] The instant appeal does not concern the trial court's ruling regarding Father's relocation petition.

discretion standard does not require a trial court to render an ideal order, even in matters involving visitation, to withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution.

Janet L. Richards, *Richards on Tennessee Family Law* § 9-2 (2d ed. 2004) (quoting **Eldridge v. Eldridge**, 42 S.W.3d 82, 85 (Tenn. 2001)).

## IV. ANALYSIS

### A.

The central issue in this case is the trial court's decision to change the primary residential parent of the children from Mother to Father. As we have recently explained:

Upon a petition to modify custody from one parent to the other parent, "the 'threshold issue' is whether a material change in circumstance has occurred after the initial custody determination." *See* **Kendrick v. Shoemake**, 90 S.W.3d 566, 570 (Tenn. 2002) (quoting **Blair v. Badenhope**, 77 S.W.3d 137, 150 (Tenn. 2002)). Upon a trial court's finding that a material change in circumstance affecting the children has occurred, "it must then be determined whether the modification is in the child[ren]'s best interests." **Kendrick**, 90 S.W.3d at 570 (citing Tenn. Code Ann. § 36-6-106); *see generally* **Boyer v. Heimermann**, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007) ("In approaching questions of custody and visitation, the needs of the children are paramount; the desires of the parents are secondary.").

**Bastone v. Bastone**, No. E2020-00711-COA-R3-CV, 2021 WL 1711098, at *7 (Tenn. Ct. App. Apr. 30, 2021).

Here, the trial court found that Father had shown a material change in circumstances sufficient to warrant reconsideration of the primary residential parent. The trial court then determined that it was in the children's best interests for Father to be named their primary residential parent and to adopt Father's proposed parenting plan. In the body of her brief, Mother asserts that the trial court erred in its initial finding concerning the material change in circumstances. Mother also contends that that Father did not properly seek a change in the primary residential parent. We respectfully disagree that Mother is entitled to relief as to either argument.

First, we conclude that Mother has waived any argument that the trial court erred in its determination regarding a change in circumstances. It is well-settled that issues argued in the body of a brief but not designated as an issue are waived on appeal. *See* **Childress v. Union Realty Co.**, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("We consider an issue waived where it is argued in the brief but not designated as an issue."). The specific issue

that Mother raised with regard to the parenting plan is as follows:

> Therefore, this court should find that the trial court erred in finding that it is in the best interest of the children to change the primary residential parent designation from [] Mother to []Father because it incorrectly applied Tennessee law when analyzing the best interest factors set forth in Tennessee Code Annotated § 36-6-106.

As is evident, this issue is directed not toward the trial court's findings as to a material change in circumstances, but only as to the issue of best interest. Mother's contention that the trial court erred in finding a material change in circumstances is therefore waived.

We also disagree that Father did not properly seek a change in the designation of primary residential parent. It is true that "'[j]udgments awarded outside of the scope of the requested relief are typically void.'" ***State ex rel. Nichols v. Songstad***, 563 S.W.3d 868, 875 (Tenn. Ct. App. 2018) (quoting ***Long v. Long***, No. M2015-00592-COA-R3-CV, 2015 WL 9584393, at *4 (Tenn. Ct. App. Dec. 29, 2015)). Therefore, "'[a] trial court commits error when it bases a decision, even in part, upon conclusions concerning an issue that was not raised in the pleadings or tried by consent.'" ***Id.*** (quoting ***Long***, 2015 WL 9584393, at *4). But we cannot conclude that Father did not raise this issue in his pleadings.

As previously discussed, Father filed a counter-petition on April 11, 2019. Although the counter-petition initially asserts that Father "be granted permission to relocate," elsewhere in his petition, he makes clear that he is asserting "a material change in circumstances warranting a modification of the current Parenting Plan" and that "it is in the best interest of the children that the current Parenting Plan be modified to name Father primary residential parent." Mother's contention that Father did not properly seek this relief in the trial court therefore lacks merit.

Given that the material change in circumstances issue is not properly before us, we proceed to consider the best interest component of the analysis. *See* ***Bastone***, 2021 WL 1711098, at *8 (proceeding to the best interest analysis where neither parent "contested the trial court's finding of a material change in circumstance") (citing ***Gider v. Hubbell***, No. M2016-00032-COA-R3-JV, 2017 WL 1178260, at *6 (Tenn. Ct. App. Mar. 29, 2017) (proceeding directly to the best interest analysis in a custody modification action when "both parties stipulated that a material change had occurred" and the mother did "not contest the juvenile court's finding of a material change in circumstances"); ***In re Jordin M.***, No. M2013-02275-COA-R3-JV, 2015 WL 1650243, at *9 (Tenn. Ct. App. Apr. 9, 2015) (same)). Tennessee Code Annotated section 36-6-106(a) provides that "in any. . . proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child." To determine a child's best interest, section 36-6-106(a) provides that the trial court "*shall* consider all relevant factors [listed in the statute], where applicable[.]" ***Id.*** (emphasis added). These

factors include:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of

abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Before we consider the merits of the trial court's best interest determination, we must first discuss two issues that hinder appellate review in this case. First, no transcript or statement of the evidence was filed by either party in this case. Under Rule 24 of the Tennessee Rules of Civil Procedure, the appellant is generally tasked with providing this Court with a transcript or statement of the evidence that is a "fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal." Tenn. R. App. P. 24(b). Tennessee law is clear that in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 48 (Tenn. Ct. App. 2013) (quoting *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007)). We are therefore unable to correct any errors that are not reflected in either the technical record or the exhibits contained in the appellate record. *Cf. Vanquish Express, LLC v. Dixie Ohio Xpress, LLC*, No. M2018-01934-COA-R3-CV, 2019 WL 7049682, at *3 (Tenn. Ct. App. Dec. 20, 2019) (conclusively presuming the trial court's factual findings to be correct because "the errors alleged by Defendants are not reflected in the technical record"); *Hearn v. Am. Wash Co.*, No. M2017-00722-COA-R3-CV, 2018 WL 3479912, at *2 (Tenn. Ct. App. July 19, 2018) (considering the exhibits contained in the appellate record despite the absence of a transcript).

The problem with application of this rule, however, is that the "conclusive presumption applies to the trial court's *factual findings* concerning proof presented at trial." *In re Corbin W.*, No. W2018-00608-COA-R3-JV, 2018 WL 5994861, at *2 (Tenn. Ct. App. Nov. 15, 2018) (citing *In re Estate of Kysor*, No. E2014-02143-COA-R3-CV, 2015 WL 9465332, at *4 (Tenn. Ct. App. Dec. 28, 2015) (citing *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005))) (emphasis added); *see also Burris v. Burris*, 512 S.W.3d 239, 247 (Tenn. Ct. App. 2016) ("In the absence of a transcript or statement of the evidence, we conclusively presume that *the findings of fact* made by the trial court are supported by the evidence and are correct."). But as Mother correctly points out, the trial court failed to make detailed factual findings in its written order. The law is equally clear that such findings are required in bench trials of this type.

Rule 52.01 of the Tennessee Rules of Civil Procedure requires that trial courts make findings of fact in bench trials. Specifically, Rule 52.01 states as follows:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

An order meets the requirements of Rule 52.01 only when the order "'disclose[s] to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C Federal Practice and Procedure § 2579, at 328). In the context of a child custody decision implicating the section 36-6-106 factors, we have held that while the trial court is not required to "list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination," consideration of these factors to determine best interest is mandatory. *Murray v. Murray*, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010); *see also* *Broderick D. v. Murray*, No. M2018-00146-COA-R3-CV, 2019 WL 4702622, at *2 (Tenn. Ct. App. Sept. 25, 2019); *Grissom v. Grissom*, 586 S.W.3d 387, 393 (Tenn. Ct. App. 2019).

Mother argues that the trial court's order is deficient in that it "does not satisfactorily cite to the trial court record" and makes "legal conclusions without stating any findings of fact that support said conclusions[.]" Mother asserts that the trial court's order should therefore be reversed and she be reinstated as primary residential parent. To an extent, we agree with Mother. Although we are without the benefit of a transcript or statement of the evidence, we can review the technical record in this case to the extent that Mother asserts that errors are apparent therefrom. *See* *Helm v. Wells*, 488 S.W.2d 733, 734 (Tenn. Ct. App. 1972) ("While it is true that in cases on appeal where a question of fact is involved, such presumption does prevail, it is also true that where the issues before this court can be resolved from the technical record, such presumption is not controlling."); *cf.* *Brubaker v. Beckham*, No. M2014-01751-COA-R3-CV, 2016 WL 3178054, at *3 (Tenn. Ct. App. May 26, 2016) (considering the adequacy of the trial court's written order despite the fact that the appellant had provided a statement of the evidence of only "limited" assistance). Our review indeed reveals that the trial court's written order in this case is deficient. First, the trial court failed to make any factual findings to support its rulings as to many of the factors. For example, with regard to factor one, relating to which parent performed the majority of parenting of the child on a daily basis, the trial court made no findings of fact. Even where the trial court made some factual findings to support its ruling as to a factor, it provided little elaboration. As an example, with regard to factor eight, the trial court stated nothing other than Mother was "emotionally unfit" to be the primary residential parent.

Where we disagree with Mother, however, is the effect of the trial court's failure to comply with Rule 52.01. As we have previously explained:

> Historically, appellate courts were presented with two avenues in responding to a trial court's failure to make adequate findings of fact and conclusions of law: (1) vacate and remand for the trial court to make the appropriate findings; or (2) conduct a review of the facts of the case without any deference to the trial court's ruling. *Compare Renken* [*v. Renken*], [No. M2017-00861-COA-R3-CV,] 2019 WL 719179, at *5 [(Tenn. Ct. App. Feb. 20, 2019) (vacating and remanding)]; *Paschedag* [*v. Paschedag*], [No. M2016-00864-COA-R3-CV,] 2017 WL 2365014, at *4 [(Tenn. Ct. App. May 31, 2017) (same)], *with Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) ("Because there are no findings of fact for us to review, we shall conduct our own de novo review to first determine where the preponderance of the evidence lies and then determine whether the evidence, when applied to the applicable legal principles, provides a proper factual foundation for the decision challenged on appeal, that being the parenting schedule.").

*Grissom*, 586 S.W.3d at 396. Thus, a trial court's failure to make findings of fact and conclusions of law does not automatically require reversal of the trial court's decision. Instead, either a remand or an independent review may be warranted, depending on the circumstances. *Cf. Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012) (quoting *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)) ("This Court may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'") (some internal quotations and alterations omitted).

Some considerations in this case certainly favor soldiering on to review the trial court's decision. For example, the written order does contain some factual findings that underpin the trial court's decision. And unlike other cases, it is clear which factors the trial court concluded held more weight. *Cf. Grissom*, 586 S.W.3d at 397 (remanding, in part, because "there is simply no way to discern which factors weigh more heavily in light of the needs and situation of this particular child."). Moreover, many of the factors on which the trial court declined to provide a detailed analysis are not disputed on appeal. It is therefore difficult to discern how the trial court's lack of findings on these factors prejudices the parties. *See* Tenn. R. App. P. 36(b) (discussed in detail, *infra*).

Importantly, we also take judicial notice of the fact that the trial judge who presided over this case has recently retired. *Cf. Regions Com. Equip. Fin. LLC v. Richards Aviation Inc.*, No. W2020-00408-COA-R3-CV, 2021 WL 1811754, at *7 (Tenn. Ct. App. May 6, 2021); *Kathryne B.F. v. Michael David B.*, No. W2014-01863-COA-R3-CV, 2015

WL 4366311, at *17 n.17 (Tenn. Ct. App. July 16, 2015) ("We take judicial notice of the fact that the original trial judge has retired."); **State v. Tawater**, No. M2013-02126-CCA-R3-CD, 2014 WL 4809537, at *8 (Tenn. Crim. App. Sept. 29, 2014) ("We take judicial notice that the trial judge who presided over this case has retired."). Thus, if we were to vacate the trial court's judgment, it would be heard before a different judge. An entirely new trial may then be required.

In some circumstances, the fact that the proceedings would be delayed due to the retirement of the original judge was not sufficient to persuade us to solider on with our review. *See* **Brubaker**, 2016 WL 3178054, at *5 (Tenn. Ct. App. May 26, 2016) (quoting **In re Estate of Oakley**, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *12 (Tenn. Ct. App. Feb. 10, 2015)) (holding that despite the fact that the original trial judge had retired and further proceedings would delay resolution, the trial court's failure to comply with Rule 52.01 "'requires this court to vacate the judgment and remand for a new trial'"). But neither **Brubaker** nor **Estate of Oakley** involved the custody of children who had been subjected to fairly continuous upheaval as a result of this litigation. Thus, remanding for further proceedings would only delay the stability that this Court has repeatedly emphasized is an important consideration for the lives of children. *See, e.g.,* **In re Z.J.S.**, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *17 (Tenn. Ct. App. June 3, 2003) (quoting Jennifer Titus, Comment, *Adding Insult to Injury: California's Cruel Indifference to the Developmental Needs of Abused and Neglected Children From Birth to Three,* 39 Cal. W.L.Rev. 115, 134-35 (2002) ("The American Academy of Pediatrics notes '[s]tability in child care . . . is important.'")). Under a similar circumstance, we held that "the interest of justice and economy" supported soldiering on to consider a trial court's ruling despite the lack of necessary findings of fact and conclusions of law. *See* **Kathryne B.F. v. Michael David B.**, 2015 WL 4366311, at *17.

But, of course, Mother's failure to file a transcript or statement of the evidence means that we are largely unable to independently review the evidence to determine where the preponderance of the evidence lies. Thus, we are left with the question of whether the trial court's or Mother's deficiency strikes the fatal blow to appellate review in this case. Consequently, we must determine whether the proper remedy is to: (1) conclusively presume the trial court's ruling is correct despite the lack of detailed factual findings; (2) vacate the decision of the trial court and remand, acknowledging that stability for the children may be delayed as a result; or (3) independently review the best interest issue with only what we can glean from the limited record on appeal, such as the exhibits to the trial.

One additional fact convinces us that the third option is most apt: while Mother did not properly file a transcript or statement of the evidence, she did file a CD-ROM containing an audio recording of the trial proceedings. Father did not object to this filing in the trial court, nor did he assert that it was not an accurate representation of what occurred at trial. In a July 2, 2020 order, however, we explained that except in the limited circumstances outlined in Tennessee Supreme Court Rule 26, recordings of court

proceedings are not permitted in lieu of transcripts or statements of the evidence.[4] Certainly, Mother's filing does not appear to comply with the requirements of Rule 26. So it appears that Mother indeed failed to comply with Rule 24, such that the conclusive presumption would be appropriate.

We note, however, that the Tennessee Rules of Appellate Procedure are to "be construed to secure the just, speedy, and inexpensive determination of every proceeding on its merits." Tenn. R. App. P. 1. Accordingly, we are permitted to suspend the Tennessee Rules of Appellate Procedure in limited, appropriate circumstances:

> For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion, [except some rules not applicable here].

Tenn. R. App. P. 2. Thus, Rule 2 explicitly states that good cause to suspend our rules may exist when necessary to "expedit[e] decision on any matter." Moreover, the Tennessee Supreme Court has held that Tennessee court's "jurisprudential rules," such as waiver, "should be interpreted and applied in a way that enables appeals to be considered on their merits." *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) (citing Tenn. R. App. P. 1).

As previously discussed, at least one possible remedy in this case would result in considerable delay in these children's lives. Another remedy would prohibit us from deciding this case on the merits simply because we do not have a proper transcript or statement of the evidence, despite the availability of what is undisputedly a fair and accurate record of what transpired in the trial. *See* Tenn. R. App. P. 24 (noting that the purpose of the transcript or statement of the evidence requirement is to provide this Court with "fair, accurate, and complete account of what transpired" at trial). Finally, we could choose to solider on to decide this case on the merits, despite Mother's clear failure to follow the directives of our appellate rules. Certainly, we do not condone Mother's clear failure to comply with our rules. However, we must conclude that under the unique circumstances of this case, these competing interests compel us to exercise our discretion to consider the audio recording of the trial in order to decide this case on the merits without delay. We caution litigants, however, that we may not be so forgiving of the failure to comply with Rule 24 in the future.

In light of our ability to review this recording, which neither party disputes is an accurate reflection of the trial and includes the trial court's oral ruling illuminating its

---

[4] In this order, we noted that Mother could have a transcript or statement of the evidence prepared from the recording. Mother apparently declined to do so.

- 13 -

reasoning, we will proceed to independently review the record to determine whether the trial court properly found that the children's best interests were served by naming Father primary residential parent. *See Mabie v. Mabie*, No. W2015-01699-COA-R3-CV, 2017 WL 77105, at *3 (Tenn. Ct. App. Jan. 9, 2017) ("[B]ecause the trial court's reasoning is evident to some extent from its oral and written rulings, . . . we choose to exercise our discretion" and "solider on" with appellate review).

In this case, the trial court ruled that factors 1, 5, and 10 favored Mother, factors 2, 4, 3, and 11 favored Father, factors 6, 7, and 9 were equal, and factors 3, and 13–15 were inapplicable. Neither party disputes many of the factors. As such, we will not tax the length of this Opinion with discussion of factors not in dispute. We therefore confine our review to those factors in dispute.

Mother first contends that the trial court erred in finding factor 2 in favor of Father. This factor concerns

> [e]ach parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-1-106(a)(2). To determine each parent's willingness to facilitate a relationship with the other parent, "the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order[.]" *Id.*

The trial court found that this factor favored Father, citing Mother's "egregious behavior" as reflected in a phone call between Mother and Father. Moreover, the trial court found that the phone call was "telling of Mother's alienation of the children from Father." The trial court elaborated further in its oral ruling, finding that this "factor overwhelmingly favors Father and is the most significant factor in the court's decision."

On appeal, Mother asserts that the trial court over-relied on this "eight-and-one-half minute" phone call in determining that Mother was engaging in alienation and in finding that this factor overwhelmingly favors Father. Respectfully, we disagree. Here, the phone call begins between Father and one of the children, in which the child asks Father about going to court over the Thanksgiving break. It is therefore apparent that prior to this call Mother informed the children of the legal proceedings that had occurred regarding parenting time over the holiday. When Father calmly refuses to discuss the legal matter with the child, Mother interrupts the call to angrily confront Father. Throughout the course of the call, Mother, inter alia, (1) calls Father a "selfish pr*ck," "awful," "a piece of s**t,"

and "a selfish piece of s\*\*t" (2) states that she has every right to be "enraged"; and (3) asks "what the f\*\*k" about Father's wife and stating that she "needs to go see a f\*\*\*\*\*g counselor." Moreover, while Mother vehemently denied at trial that this conversation occurred in the presence of the children, she essentially admitted on the recording that it was, responding to Father's request to talk about the matter without the children present with "What am I supposed to do? Walk away and leave them unattended. I can say whatever I want to say. . . . I can't control them." Moreover, children can be heard in the background of the call. On appeal, Mother now apparently concedes that the children were present for parts of the call, but argues that she told the children to leave so that she could communicate with Father. Mother had a variety of options, however, such as moving her own location or ending the call in favor of a time where the children were not present. Instead, Mother purposely chose to engage in her tirade while her children were present.

The evidence therefore fully supports the trial court's finding that this call constituted egregious misconduct on the part of Mother. Mother not only uses foul language and heated rhetoric, but she disparages Father in front of her children. The catalyst for this call was Mother's anger over Father's decision to enforce the terms of the initial parenting plan. Certainly, some incivility between divorced parties is not altogether surprising. The problem here is that Mother chose to exhibit her incivility in an extreme manner in front of her children. *Cf.* **Brown v. Brown**, 571 S.W.3d 711, 720 (Tenn. Ct. App. 2018) (holding that trial court wrongly weighed factor 2 because "[b]y containing their incivility to private, written messages inaccessible to their infant child, mother and father sheltered the child from the brunt of the verbal attacks"). By engaging in this behavior when her children were sure to overhear, Mother not only exposed the children to her own lack of emotional control, but also her negative opinions on the children's own father. We have previously observed the negative impact of this behavior:

> Your children have come into this world because of the two of you. Perhaps you two made lousy choices as to whom you decided to be the other parent. If so, that is your problem and your fault.
>
> No matter what you think of the other party—or what your family thinks of the other party—those children are one half of each of you. Remember that, because every time you tell your child what an idiot his father is, or what a fool his mother is, or how bad the absent parent is, or what terrible things that person has done, you are telling the child that half of him is bad.
>
> That is an unforgivable thing to do to a child. That is not love; it is possession. If you do that to your children, you will destroy them as surely as if you had cut them into pieces, because that is what you are doing to their emotions.

*Malmquist v. Malmquist*, No. W2007-02373-COA-R3-CV, 2011 WL 1087206, at \*31 (Tenn. Ct. App. Mar. 25, 2011) (quoting Judge Don R. Ash, *Bridge over Troubled Water:*

*Changing the Custody Law in Tennessee*, 27 U. Mem. L. Rev. 769, 771 (1997) (quoting a letter from Judge Dotson Haas, Walker, Minnesota)). As a result, this Court has recognized that this type of behavior runs the risk of alienating the children from his or her parent and may be sufficient to warrant a change in the designation of primary residential parent. *See* ***Killion v. Sweat***, No. E1999-02634-COA-R3-CV, 2000 WL 1424809, at *3 (Tenn. Ct. App. Sept. 21, 2000) ("We find that a change of custody is also warranted by the disparaging remarks made by Mother to the child [about Father], which remarks are basically undisputed."). Moreover, other evidence supports the trial court's finding that Mother is reluctant to facilitate a close and loving relationship between Father and the child. First, the evidence shows that Mother has sometimes denied Father his scheduled visitation, resulting in the very court order that prompted the angry phone call. Second, text messages in the record demonstrate that when Father called to speak with the children, Mother did not encourage the children, the youngest of whom was nine at the time, to speak with him. Instead, she admittedly declined to do so in an effort to "respect their wishes." These instances, coupled with the profane and derogatory phone call, demonstrate that Mother is unwilling to facilitate a close and loving relationship between Father and the children. As such, we agree that this factor strongly favors Father.

Mother next takes issue with the trial court's finding as to factor 4.[5] Here, the trial court found that this factor favored Father, as Mother exhibited a reluctance to provide basic clothing needs for the children when they visit Father. We agree that the trial court's finding on this issue lacks elaboration. Our independent review of the record, however, finds considerable support for the trial court's finding. In particular, Father and Step-Mother both testified that Mother often sent the children to his home for extended visits with few items of clothing or shoes. Step-Mother in particular testified that Mother packed the children very little clothing or other necessary items for their extended visits. And the items that were provided were sometimes overly worn, the wrong season, or the wrong size. Because of the extended period of time between Father's visits, he was required to purchase entirely new wardrobes for the children due to changes in their sizes. Mother's brief points to no evidence that indicates that the trial court should not have credited this testimony. As a result, we likewise conclude that this factor favors Father.

The trial court also found that factor 8, concerning the mental and emotional fitness of the parent, favored Father. The trial court's oral ruling indicates that its finding as to this factor stemmed from Mother's behavior in the recorded phone call. In particular, the trial court orally found that while "on the surface" this factor appears equal, "no one that heard that conversation could possibly conclude that Mother is emotionally fit to be the primary residential parent." After our independent review of the record, we agree. The recorded phone call indicates that Mother lacks good judgment in that she has chosen to involve her

---

[5] Mother filed both an initial brief and then an amended brief after the record was supplemented to include several exhibits. Mother made this argument solely in her initial brief, but we have addressed it in an abundance of caution.

children in her custody dispute with Father. Mother berates Father on the phone call for hurting the children, while failing to recognize how her own behavior does so. Even when Father suggests that they continue the conversation outside the presence of the children, she refuses, stating that she "can say whatever" she "want[s] to say." Mother also blames Father for essentially forcing her to have the conversation in front of the children, refusing again to see her own part in their distress. The trial court was correct to question Mother's emotional maturity in light of her actions. As a result, we cannot conclude that the trial court erred in concluding that this factor too favors Father.

Mother also takes issue with the trial court's finding as to factor 11. The trial court found that this factor favored Father "due to Mother's emotional abuse of the children." Again, Mother's only arguments as to this factor is that it is not supported by sufficient factual findings and that the phone call itself is not sufficient proof to sustain the trial court's finding that she committed emotional abuse. After our independent review of the record, however, we conclude that this factor indeed favors Father.

> The trial court's oral ruling as to this factor is particularly illuminating:
> As a I just mentioned, those children are emotionally abused when that sort of conversation and discussion takes place in their presence. And it went on, I don't know, I didn't time it, 15 minutes. Something like that. Seems like. There were multiple opportunities during the course of that conversation for the Mother to extract herself from it and the Father was asking her to extract herself from it time and time again. Not only did she rebuff/reject those opportunities, she insisted on bringing the children further into it.

The record fully supports the trial court's findings. Here, Mother engaged in, by her own admission, an "enraged" tirade against Father simply over his decision to seek court-intervention to vindicate his agreed-upon visitation rights. This tirade was not done in private, but on a phone call that began with the child asking pointed questions of Father that appear to mimic Mother's own issues with Father's decision to take the holiday parenting time issue to court. As a result, it is apparent from this call that Mother has not set an appropriate boundary with her children regarding the disputes with Father. Instead, it appears that she has chosen to engage the children in the dispute in an unhealthy manner. We cannot say that the evidence preponderates against the trial court's explicit finding that this conduct amounts to emotional abuse. We therefore affirm the trial court's ruling as to this factor.

In sum, even following our independent review, we conclude that the record supports the trial court's findings that more factors favor Father than Mother. The fact that more factors favor Father does not, however, end our inquiry:

> Ascertaining a child's best interests does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of

the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*In re Marr,* 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (involving termination of parental rights); *see also* **Solima v. Solima**, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *4 (Tenn. Ct. App. July 30, 2015) (citing *In re Marr*, 194 S.W.3d at 499 ( "Determining a child's best interest [in the child custody context] is a fact-sensitive inquiry, and, depending upon the significance of certain facts, a single factor can control the outcome of this determination.")). We cannot deny that some of the facts presented favor Mother, particularly Mother's role as the children's primary caregiver and Step-Mother's letter in which she claims she will have the main role in parenting the children should Father be named primary residential parent. But while the trial court's order is not as detailed as we would prefer, the trial court's order makes clear that it did not consider Mother's role as primary caregiver to be as controlling as Mother's inability to facilitate a close and loving relationship with Father. The trial court's concern is fully supported by the record, as the conduct Mother displayed in the recorded phone call was highly inappropriate. Thus, our independent review reveals that the trial court correctly analyzed all of the statutory factors. Moreover, its most pressing concern is fully supported by evidence in the record. Under these circumstances, we are typically reluctant to second-guess a trial court's child custody decision. *See* **Nelson v. Nelson**, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001) ("In deciding custody matters, trial courts take into account a number of factors [and] this Court is reluctant to second-guess a trial court's decisions regarding child custody.") (internal quotation marks and citations omitted). Consequently, we cannot say that the trial court erred in deciding that it was in the children's best interest for Father to be named primary residential parent.

## B.

Mother next argues that the trial court erred in finding her guilty of criminal contempt. As the Tennessee Supreme Court has explained:

Criminal contempts . . . are intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society. Therefore, sanctions for criminal contempt are generally both punitive and unconditional in nature. While criminal contempts may arise in the course of private civil litigation, such proceedings, "in a very true sense raise an issue between the public and the accused." In the trial of a criminal contempt case, therefore, guilt of the accused must be established by proof beyond a reasonable doubt.

***Black v. Blount***, 938 S.W.2d 394, 398 (Tenn. 1996) (citations omitted). "Persons convicted of criminal contempt lose their presumption of innocence, and bear the burden of overcoming their presumption of guilt on appeal." ***Thigpen v. Thigpen***, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citations omitted). "Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." ***Id.*** (citing Tenn. R. App. P. 13(e)).

A finding of criminal contempt requires four elements: (1) the order allegedly violated was lawful; (2) the order was clear and unambiguous; (3) the individual charged did in fact violate the order; and (4) the individual acted willfully in so violating the order. ***Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.***, 249 S.W.3d 346, 354–55 (Tenn. 2008); ***Furlong v. Furlong***, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011) (stating that the four-element analysis outlined in ***Konvalinka*** applies to criminal and civil contempt actions).

Mother again takes issue with the trial court's lack of findings. Although the trial court's findings as to Mother's contempt are not voluminous, we conclude that they are sufficient to afford meaningful appellate review. The trial court found that Mother was guilty of contempt "beyond a reasonable doubt for making derogatory comments about Father in the presence of the children[.]" Given the trial court's prior findings regarding Mother's egregious behavior in the recorded phone call, the basis of the trial court's contempt finding is clearly discernable.

Mother has not addressed any of the required elements in either of her appellate briefs. We note, however, that the permanent parenting plan contained in the technical record in this case clearly prohibits Mother's conduct. Specifically, the parenting plan in place at the time that Mother made these comments provided that each parent had "the right to be free of unwarranted derogatory remarks made about such parent or such parent's family by the other parent to or in the presence of the child." This language is consistent with rights of parents outlined in Tennessee Code Annotated section 36-6-101(a) (3)(B) (providing for "[t]he right to be free of unwarranted derogatory remarks made about such parent or such parent's family by the other parent to or in the presence of the child"). This Court has previously held that this prohibition may give rise to a conviction for criminal contempt. *See* ***Boren v. Rousos***, No. M2014-02504-COA-R3-CV, 2015 WL 7182141, at *4 (Tenn. Ct. App. Nov. 13, 2015) (citing the rights as incorporated into a parenting plan); ***Duke v. Duke***, No. M2013-00624-COA-R3-CV, 2014 WL 4966902, at *32 (Tenn. Ct. App. Oct. 3, 2014) (citing the statutory rights). Thus, there is no dispute that a clear and unambiguous order prohibited either parent from making unwarranted derogatory comments about the other to or in the presence of the children.

The proof that Mother willfully violated this provision is also overwhelming. As detailed above, the recording of the phone call between Father and Mother reveals that she

indeed made a multitude of derogatory comments to and about Father. Mother now apparently admits that the children were present for some of these comments. And even when Father asked Mother to stop her comments in front of the children, she persisted. Nothing in Mother's brief suggests that these comments were warranted. Indeed, even Mother admits in her amended brief that her behavior was "condemnable, perhaps sanctionable, or even punishable." We agree. Thus, we conclude that Mother has failed to overcome the presumption of guilt that she willfully violated the parenting plan by making unwarranted derogatory remarks about Father while the children were present. *See* **Thigpen**, 874 S.W.2d at 53. As such, the trial court's finding of contempt and its sentence of two days' incarceration are affirmed.[6]

## C.

Finally, Mother asserts that it was error for the trial court to deny her motion for the appointment of a guardian ad litem. The appointment of guardians ad litem in child custody proceedings is governed by Rule 40A of the Tennessee Supreme Court Rules. Under this rule, the trial court may appoint a guardian ad litem in a child custody proceeding when "the court finds that the child's best interests are not adequately protected by the parties and that separate representation of the child's best interests is necessary." Tenn. R. Sup. Ct. 40A, § 3(a). In making this determination, the courts are directed to consider a number of factors, including the fundamental rights of the parents, the financial burden of an appointment, and the particularized need for the appointment. *See* Tenn. R. Sup. Ct. 40A, § 3(c).

Mother again asserts that the trial court failed to consider the appropriate factors in denying her motion for the appointment of guardian ad litem. The trial court's order indeed contains no findings on the subsection 3(c) factors. It is true that where a discretionary decision is made on an issue tried in a bench trial, the trial court's failure to make specific factual findings means that we are unable to review the trial court's decision. *See* **In re Noah J.**, No. W2014-01778-COA-R3-JV, 2015 WL 1332665, at \*5 (Tenn. Ct. App. Mar. 23, 2015) ("Unfortunately, we cannot determine whether the trial court applied an incorrect legal standard or relied on reasoning that caused an injustice because we do not know what legal standard the court applied, or what reasoning it employed."); **Halliday v. Halliday**, No. M2011-01892-COA-R3CV, 2012 WL 7170479, at \*12 (Tenn. Ct. App. Dec. 6, 2012) (explaining that "this Court cannot determine whether the trial court abused its discretion" in the absence of factual findings by the trial court). We therefore agree that the best practice is for the trial court to discuss all applicable factors in its order, so as to facilitate appellate review.

But it is also true that not every discretionary decision made by the trial court

---

[6] Mother does not specifically take issue with the length of the sentence in either of her briefs. As such, we will not address it.

requires that factual findings be made. Indeed, Mother cites no law that states that the trial court's order denying a motion for a Rule 40A guardian ad litem must contain detailed factual findings as to these factors, nor have we found any. *But see **Cremeens v. Cremeens***, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at *11 (Tenn. Ct. App. July 24, 2015) (holding that "we believe the rule requires the trial court to consider the factors stated in subsection (4), make findings of fact relevant thereto, and set forth those findings in the order allocating the fees and expenses" in the context of a dispute over how to allocate guardian ad litem fees). Indeed, Rule 52.01, the rule that Mother relies on in her earlier arguments, specifically exempts most motions from its requirements. *See* Tenn. R. Civ. P. 52.01 ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).").

Moreover, even Mother chooses to address only a single factor in her appellate brief: whether there is "any higher than normal level of acrimony indicating the parties' lack of objectivity concerning the needs and best interests of the child[.]" Tenn. R. Sup. Ct. 40A, § 3(c)(6)(v). In determining whether this single factor necessitates reversal, we keep in mind two important facts. First, Rule 40A explicitly states that guardians ad litem should be appointed only in rare cases: "Courts should not routinely appoint guardians ad litem in custody proceedings. Rather, the court's discretion to appoint guardians ad litem shall be exercised sparingly. In most instances, the child's best interests will be adequately protected by the parties." Tenn. R. Sup. Ct. 40A, § 3(b). Thus, the plain language of Rule 40A indicates that decisions to appoint guardians ad litem are discretionary. *Id.*; *see also **Newsome v. Porter***, No. M2011-02226-COA-R3-PT, 2012 WL 760792, at *2 (Tenn. Ct. App. Mar. 7, 2012) ("Section 3 of Supreme Court Rule 40A makes it discretionary for a trial court to appoint a guardian ad litem in a 'custody proceeding.'"). "An abuse of discretion occurs when a trial court applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." ***Milan Supply Chain Sols., Inc. v. Navistar, Inc.***, --- S.W.3d ---, 2021 WL 3283067, at *12 (Tenn. Aug. 2, 2021) (internal quotation marks and citation omitted). "[W]hen reviewing a discretionary decision by the trial court, . . . the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105–06 (Tenn. 2011).

Second, we generally only correct prejudicial errors that were not the result of a parties' own mistake. Rule 36(a) of the Tennessee Rules of Appellate Procedure first provides that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Rule 36(b) further states that "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Mother filed her motion for the appointment of a guardian ad litem less than a month prior to the agreed upon trial date and argued that a continuance

would be necessary in order for the newly appointed guardian ad litem to investigate the case. In support, Mother cited the serious allegations raised in each party's petition. Both Mother's and Father's petitions had been pending for nearly seven months at the time that Mother filed her motion. She was therefore well aware of the serious allegations raised in the petitions, but waited until the eleventh hour to file her request for a guardian ad litem.

Additionally, Mother has not indicated what prejudice she suffered from the denial of her motion. To be sure, there was considerable acrimony in this case. But we cannot say that the children's interests were not adequately represented by the often diametrically opposed positions of the parties. Moreover, Mother's allegation in her motion that Father was attempting to influence the children was simply not borne out by the proof. Instead, as previously discussed, the proof generally indicated that it was Mother who improperly involved the children in their parents' disputes. As a result, we discern no abuse of discretion in the trial court's determination that that this was not one of the few custody cases in which a guardian ad litem was necessary.

**D.**

Finally, Father requests an award of attorney's fees in this case, citing only Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

A frivolous appeal is one that is devoid of merit or has no reasonable chance of success. ***Robinson v. Currey***, 153 S.W.3d 32, 42 (Tenn. Ct. App. 2004). Here, although Mother did not ultimately prevail in this appeal, she was correct in her assertion that the trial court's order was deficient. As such, this appeal was not frivolous. Father cited no other basis for an award of attorney's fees in his brief. As such, we decline to award fees in this case.

**III.   CONCLUSION**

The judgment of the Montgomery County Circuit Court is affirmed, and this cause is remanded for any further proceedings as necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant, Sarah Richardson, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE
